IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

TABATHA S. JOHNSON,

    PLAINTIFF,

VS.                                                                        CASE NO.: CV 12-J-3506-NE

CAROLYN V. COLVIN,[1]
Acting Commissioner of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and briefs of the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

Plaintiff applied for disability insurance benefits February 6, 2009, alleging disability from August 17, 2006 (R. 76-78, 340). At the time of the hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 35 years old and had graduated from high school (R. 38). Plaintiff alleged disability due to a back injury, depression, and anxiety (R. 94). Plaintiff's past relevant work experience is listed as a customer service representative, and as an administrative assistant. (R. 158).

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action. *See* Fed. R. Civ. P. 25(d).

The ALJ found plaintiff had the following severe impairments: lumbar degenerative disc disease with mild broad-based disc protrusions at L4-5 and L5-S1, lumbar spinal stenosis at L5-S1, lumbar facet syndrome; right sacroiliitis, anxiety syndrome, and affective mood disorder (R. 15), He further found that those impairments or combination of impairments did not meet or medically equal any of the impairments listed in Appendix 1 of Subpart P, 20 CFR Part 404 (R. 16). The ALJ concluded that the plaintiff had the residual functional capacity to perform a reduced range of sedentary work. (R. 17-18). Specifically, the ALJ found:

> [S]he can perform sedentary type work, lifting 10 pounds on a frequent basis. She can do a sit/stand type job, standing for 15 minutes, sitting 15 minutes, and walking 10 minutes all throughout an eight-hour workday. She can perform occasional postural maneuvers such as balancing, stooping, bending, and crouching. She occasionally can climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. She cannot work with exposure to unprotected heights. She can perform low-stress jobs at an SVP of 2 or less (unskilled) involving only simple work-related decisions. She can concentrate for two-hour periods across an eight-hour work day with normal breaks.

(*Id.*). The ALJ found that the plaintiff could not return to her past relevant work (R. 21). The Vocational Expert (VE) testified, however, that plaintiff could perform other work, including work as an inspector, table worker, and a folder (R. 379-380). Based on these limitations and the VE's testimony, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act (R. 22).

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining:  1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, this limited scope does not render affirmance automatic, for

> 'despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached.'  Bridges v. Bowen, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701.  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

Plaintiff contends that the ALJ did not accord proper weight to the opinion of her treating physician. Pl.'s Br. at 7-10. Plaintiff further contends that the ALJ failed to include all of plaintiff's limitations in his hypothetical questions to the VE. Pl.'s Br. at 12.

Plaintiff's first claim is that the ALJ failed to give substantial weight to a letter from Dr. Greg Millar, a chiropractor, and Dr. Michael Dick, a medical doctor (R.

303). On March 24, 2010, Dr. Millar and Dr. Dick opined that plaintiff could not perform "any substantial gainful employment due to her medical conditions which have existed for a continuous period in excess of 12 months." (*Id.*). Dr. Millar and Dr. Dick stated that plaintiff would need "continuing ongoing care" for progressive degenerative disc disease that "will only get worse over time." (*Id.*).

The opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003).

As an initial matter, a chiropractor "is not considered an 'acceptable source' and, thus, his opinion cannot establish the existence of an impairment." *Crawford v. Comm'r*, 363 F.3d 1155, 1160 (11th Cir. 2004). Since Dr. Millar is not considered a treating physician under the regulations, the ALJ was not required to give his opinion substantial weight. *Id.* In addition, Dr. Millar's opinion is not supported by his own treatment notes. On the same day as Dr. Millar opined that plaintiff was unable to perform "any substantial gainful employment" and her condition "will only get worse over time," his treatment notes state plaintiff is "making acceptable progress toward resolution of the chief complaint." (R. 305). In fact, Dr. Millar makes this assessment

4

on the majority of his treatment notes. (R. 305-318). Dr. Millar's stated treatment goal is to "return Mrs. Johnson to normal daily activities without pain." (R. 321). Acceptable progress toward resolution of plaintiff's pain is contrary to a finding of disability. Further, a radiology report ordered by Dr. Millar and prepared by Dr. Michael Jokich, M.D., on February 16, 2010, described plaintiff's condition as "[s]ome mild straightening of the normal cervical curvature, nonspecific. Mild scoliosis of the mid to upper thoracic spine. Mild scattered spondylosis within the thoracic spine also." (R. 262).

Although Dr. Dick also signed the March 24, 2010, letter, the record does not contain any evidence of an examination by Dr. Dick (R. 303-330). As the ALJ noted, the chiropractor signed all the records associated with the March 2010 opinion (R. 21). Because no treatment records from Dr. Dick accompany the opinion letter, the ALJ properly discounted this opinion. See 20 C.F.R.§ 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion… the more weight we will give that opinion.").

Furthermore, the ALJ had no duty to give the March 2010 letter controlling or significant weight because it was not consistent with the record. See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Plaintiff first sought treatment for pain from her family physician, Dr. Emily McClure, M.D. The record indicates

5

that plaintiff was prescribed lortab[2] for shoulder, not back, pain attributed to an old rotator cuff injury in February 2008 (R. 196). On March 31, 2008, Dr. McClure first treated plaintiff with lortab for back pain (R. 198).This is approximately 18 months after the alleged onset date of disability.

Plaintiff was next examined at the Decatur Orthopaedic Clinic on November 11, 2008, by Dr. Russell Ellis, M.D. (R.211-212). Plaintiff reported that she was taking 3-4 lortab a day (*Id.*). Dr. Ellis found neurological strength from L2 to S1 was 5/5. Plaintiff could perform a deep knee bend without difficulty and there was a negative straight leg raise and negative Patrick's test bilaterally (*Id.*). On December 11, 2008, treatment notes indicate plaintiff was seen again for pain. Plaintiff stated that lortab is the only thing she is able to take which helps and doesn't cause any unwanted side effects (R. 212). Dr. Ellis noted that plaintiff is a "well-nourished, well-developed female in no acute distress, awake, alert, and oriented X3. Pleasant and cooperative with exam." (*Id.*). An MRI of plaintiff's lumbar spine was ordered and plaintiff was prescribed lortab 5 to take 1-2 tablets every 6 hours as needed (*Id.*).

---

[2] Hydrocodone (lortab) is a semisynthetic narcotic analgesic and antitussive with multiple actions qualitatively similar to those of codeine. Most of these involve the central nervous system and smooth muscle. The precise mechanism of action of hydrocodone and other opiates is not known, although it is believed to relate to the existence of opiate receptors in the central nervous system. In addition to analgesia, narcotics may produce drowsiness, changes in mood and mental clouding.
http://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=1fb18a80-8ef0-4bce-bb0d-9a86851c5206 (Last visited July 9, 2010).

The MRI was read by Dr. Timothy Frye, M.D. on January 8, 2009. Dr. Frye found that the MRI was an "essentially negative exam." (R. 214). On January 12, 2009, Dr. Ellis recorded that the MRI images were reviewed and basically normal (*Id.*). Dr. Ellis stated that there "maybe (sic) some slight lateral recess stenosis on the right at the L4-5 level but it is definitely not substantial. There is slight bulging of the L4-5 disc but no disc herniation." (R. 212). Dr. Ellis discussed a joint injection, referral to pain management or referral to a spine surgeon as options for plaintiff. Plaintiff chose pain management and was prescribed lortab (*Id.*).

Plaintiff began seeing Dr. Ahmad Shikhtholth with Valley Pain Clinic on February 5, 2009 (R. 218-219). Dr. Shikhtholth noted that plaintiff's pain averages a 7 out of 10 on the pain scale, and goes up to 10 and down to 5 at minimum (R. 219). Plaintiff's daily activities were noted as mildly limited (*Id.*). Dr. Shikhtholth noted that plaintiff cleaned houses for a living and is constantly moving (*Id.*). Dr. Shikhtholth switched plaintiff from lortab to a low dose of methadone[3] (R. 219). On February 12, 2009, Dr. Shikhtholth notes that plaintiff's pain is controlled with

---

[3] Methadone has been studied as a therapy for cancer pain and other chronic pain states. It is an appropriate replacement opioid when pain remains poorly controlled or when side effects of other opioids limit dosage escalation. Available data suggest that methadone is effective in relieving cancer pain and has a similar analgesic efficacy and side effect profile to morphine. In a study of cancer patients with uncontrolled pain or significant side effects from opioids, 80 percent of patients reported improvement in pain control and reduction of adverse effects following transition to methadone. It may be used in patients with morphine allergy because methadone is synthetic and offers no cross-allogenicity. http://www.aafp.org/afp/2005/0401/p1353.html (Last visited July 9, 2013).

methadone (R. 218). Dr. Shikhtholth saw plaintiff on May 21, 2009, and again noted that her activities of daily living are mildly limited (R. 301). On August 20, 2009, treatment notes indicate that plaintiff stated her activities of daily living were moderately limited, however, she is still trying to exercise (R. 298).

Treatment notes indicate that plaintiff stated her pain was a 10/10 on October 16, 2009 (R. 295). Dr. Shikhtholth, however, noted that plaintiff presented awake, alert, and oriented x 3, with fluent speech and mid size reactive pupils (*Id.*). He continued current medications and for "patient education" wrote: "Home based exercise program; posture and body mechanics training" (*Id.*). On November 2, 2009, plaintiff again claimed increased pain and was given percocet[4] 325mg, twice daily as needed for a few days (R. 294). On November 5, 2009, plaintiff called requesting a prescription for percocet because it was helping her pain and was dispensed 45 percocet 325 mg to last until January 15, 2010 (R. 293). Dr. Shikhtholth gave plaintiff an additional 60 percocet on December 3, 2009 (R. 292 - 293). Dr. Shikhtholth made the decision to take plaintiff off methadone and percocet on December 15, 2009, and switch her to OPANA[5] ER 10mg (R. 291). Plaintiff was also referred to Dr. John

---

[4] Oxycodone (percocet) is a semisynthetic pure opioid agonist whose principal therapeutic action is analgesia.
http://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=3af57f54-117e-43fc-b0ae-21ef772d854e (Last visited July 9, 2013).

[5] Oxymorphone (OPANA) is used to relieve moderate to severe pain. Oxymorphone is in a class of medications called opiate (narcotic) analgesics.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a610022.html (Last visited July 9, 2013).

Johnson, M.D. for a second opinion regarding surgical options (*Id.*). Dr. Johnson ordered a lumbar myelogram that showed no definite nerve root compression and no detrimental findings (R. 249, 272). Dr. Johnson could not find anything that would benefit from surgical treatment (R. 249).

Plaintiff contacted Dr. Shikhtholth on December 21, 2009, claiming the OPANA was not working and requesting something else (R. 290). On December 22, 2009, Dr. Shikhtholth diagnosed plaintiff with "Unspecified Drug Dependence" and switched her back to methadone from OPANA (R. 289). Plaintiff again complained of pain at 10/10 on March 15, 2010 (R. 286). Dr. Shikhtholth made the decision to take plaintiff off all opioids because they were not helping plaintiff's pain (*Id.*). Additionally, Dr. Shikhtholth continued to diagnose plaintiff with "Unspecified Drug Dependence" (*Id.*).

Additionally, plaintiff's activities of daily living do not support her regular rating of her pain as a 9 on a 10 point scale.[6] Plaintiff reported to Dr. Shikhtholth on February 5, 2009, approximately 30 months after the alleged onset of disability, that she cleans houses for a living and is constantly moving (R. 219). On February 20, 2009, plaintiff stated in her adult function report that during the week she wakes up at 6:30 am, drives her children to school, comes back home and tries to do things such

---

[6] A 9 rating would be considered severe disabling pain with an inability to perform activities of daily living. *See* http://painconsortium.nih.gov/pain_scales/NumericRatingScale.pdf (Last visited July 10, 2013).

as wash clothes, wash dishes, and run errands (R. 129). Plaintiff further stated that she reads all the time, talks to others, attends sports events, goes to friends houses, and goes out to eat (R. 133). On December 31, 2009, plaintiff represented to Dr. Johnson that she smokes a pack of cigarettes a day and has been for 20 years and drinks alcohol on a daily basis (R. 252). On February 15, 2010, plaintiff stated to Dr. Millar, DC, that she exercises occasionally (R. 319).

At the hearing, plaintiff stated that she drives approximately 15 miles everyday, is able to care for her personal needs, drops off and picks up her kids at school, lays clothes out for her youngest son, goes grocery shopping, shops online, does laundry, and is able to pick up a jug of laundry detergent or a gallon of milk (R. 341-343, 345, 369, 375).

The ALJ properly applied the Eleventh Circuit two part pain standard when evaluating plaintiff's claim for disability. That standard requires "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985). The ALJ found evidence of an underlying medical condition, however, plaintiff's allegations were found inconsistent with the claimant's activities of daily living. Based on a review of

the record evidence, there is substantial evidence to support the ALJ's finding that plaintiff's ailments are not disabling.

Plaintiff next asserts that the ALJ failed to pose a hypothetical question to the Vocational Expert (VE) which comprehensively described plaintiff's limitations. In the present case, the ALJ concluded that Plaintiff retained the RFC for sedentary work except with a sit/stand type job, standing for 15 minutes, sitting 15 minutes, and walking 10 minutes throughout an eight-hour workday; occasional balancing, stooping, bending, and crouching; occasional climbing ramps and stairs, but no ladders, ropes, or scaffolds; no exposure to unprotected heights; low-stress jobs at an SVP of 2 or less involving simple work-related decisions; and she can concentrate for two-hour periods across an eight-hour workday with normal breaks (R. 17-18). The ALJ posed a hypothetical question to the VE assuming a person with the plaintiff's relevant vocational characteristics and the ability to perform work within plaintiff's RFC (Tr. 376-80). In response, the VE identified sedentary jobs plaintiff could perform, given her RFC, including inspector, table worker, and folder (Tr. 380).

Without redeciding the facts or reweighing the evidence, this court can find no basis upon which to reverse the decision of the ALJ. *See e.g.*, *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court finds that there is substantial evidence to support the ALJ's decision and that the ALJ applied the correct legal standards.

11

Accordingly, the decision of the Commissioner of the Social Security Administration will be **AFFIRMED** by separate order.

Done, this 11th of July 2013.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE